NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0738n.06

No. 10-3492

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

**FILED**

*Oct 28, 2011*

LEONARD GREEN, Clerk

ANTHONY DOE, a minor, by his parents and next
friends; JAMES DOE; JOELLEN DOE,

    Plaintiffs-Appellants,

v.

DUBLIN CITY SCHOOL DISTRICT,

    Defendant-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

_____/

Before:    MARTIN, CLAY, and WHITE, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge.  Anthony Doe and his parents, James and Joellen

Doe, brought an action against Dublin City School District alleging violations of the Individuals with

Disabilities Education Act.  The district court entered an agreed order that resulted in the School

District creating an Individualized Education Plan that meets Anthony's needs.  Having

accomplished this goal, and finding that the Does had failed to exhaust their administrative remedies

as required by the Act, it dismissed the action.  We **AFFIRM**.

**I.**

Anthony is a minor child born in 2000 who has been diagnosed with Asperger's Disorder,

Attention Deficit Hyper Activity Disorder, Anxiety Disorder, and Major Depressive Disorder.

During the second half of the 2008-09 school year his performance began to decline.  He also

developed anger issues and demonstrated explosive behavior.

In light of these problems, Anthony's parents sought to work with his school to develop an education plan within the framework of the Individuals with Disabilities Education Act, which is often referred to as IDEA. The Act is designed to ensure that all children with disabilities receive a "free appropriate public education which emphasizes special education and related services designed to meet their unique needs [and] to assure that the rights of [such] children and their parents or guardians are protected." *Forest Grove Sch. Dist. v. T.A.*, 129 S. Ct. 2484, 2491 (2009) (alterations in original, citation and internal quotation marks omitted). The Act sets forth detailed procedures by which school officials, parents, and the student can collaborate to create an Individualized Education Plan tailored to the student's individual needs. *See* 20 U.S.C. §§ 1414-15 (2006); *Sch. Comm. of Burlington, Mass. v. Dep't of Educ.*, 471 U.S. 359, 368 (1985). Any party aggrieved by a school's decision regarding a child's educational needs under the Act can bring a lawsuit in federal district court, but must first exhaust state administrative remedies. 20 U.S.C. § 1415(i)(2).

Anthony's mother, Ms. Doe, requested that the school district conduct a Multi-Factored Evaluation of Anthony in March 2009. According to the complaint, the principal refused to conduct the examination because it was too late in the school year. Anthony's parents organized a private psychiatric evaluation in April 2009, which resulted in the diagnoses detailed above.

On May 6, Ms. Doe provided the diagnoses to the school administrators and again requested that the school conduct a Multi-Factored Evaluation so that it could begin to develop an Individualized Education Plan for Anthony. The principal of Anthony's school called Ms. Doe on the morning of May 12 to inform her that he had scheduled a meeting to discuss her request for a

Multi-Factored Evaluation for that afternoon. Ms. Doe told the principal that she could not attend the meeting on such short notice because she needed to look after her other son, who suffers from conditions similar to Anthony's. The complaint alleges that the principal told Ms. Doe he would reschedule the meeting but ultimately held the meeting without either of Anthony's parents.

During this meeting, the School District concluded that Anthony did not have a disability, contrary to the medical diagnoses his parents had submitted, and provided the Does with written notice of the decision. The Does informed the principal that they were appealing the School District's refusal to evaluate Anthony and were requesting a hearing. The Does do not assert that they filed a formal, written request for a due process hearing at that time.

The Does allege that the School District told them that they must participate in a Request for Assistance Meeting before proceeding further. The Does apparently had some difficulty getting in touch with the School District, but scheduled this meeting for June 12.

During this meeting, the School District agreed to contact Anthony's doctors and prepare a behavior intervention plan with their input. However, the School District warned the Does that even if it concluded that Anthony needed an Individualized Education Plan, it could not put the plan into place until at least October of 2009. In the interim, the School District stated that it would have a nearly complete behavior intervention plan that would sufficiently address Anthony's needs such that he would be able to return to school in August when the new year would begin.

The School District provided the Does with a behavior intervention plan on August 5. The Does allege that the plan was not adequate to address Anthony's disability or allow him to return to school. On August 13, the Does submitted a second request for the School District to conduct a

Multi-Factored Evaluation and develop an Individualized Education Plan. The Does submitted additional medical evidence from Anthony's doctors with this request as well as a report from an expert in learning disabilities and behavior disorders stating that the behavior intervention plan was deficient and providing recommendations regarding what Anthony needs in an Individualized Education Plan.

With the start of the new school year rapidly approaching, the Does met with the School District on August 19. The School District continued to refuse to acknowledge that Anthony had a disability and again denied the Does' request for an Individualized Education Plan. Although the School District had promised to provide a more detailed behavior intervention plan at this meeting, it failed to do so. Without a sufficient plan in place, the Does allege that Anthony was unable to attend school.

The Does subsequently brought suit against the School District asserting violations of the Individuals with Disabilities Education Act, the Rehabilitation Act, and the Americans with Disabilities Act. The district court entered an interim agreed order that required the School District to conduct a Multi-Factored Examination and, if appropriate, prepare an Individualized Education Plan for Anthony by September 11. The parties complied with the agreed order and the School District has now satisfactorily accommodated Anthony's needs.

After the parties resolved Anthony's educational needs, the School District moved to dismiss the action pursuant to Rule 12(b)(6) based on the Does' failure to exhaust administrative remedies. The Does filed a motion for nearly forty thousand dollars in attorney's fees and costs, arguing that they were the prevailing party by virtue of getting the School District to acquiesce to the terms in the

agreed order. The district court granted the School District's motion to dismiss based on the Does' failure to exhaust administrative remedies, and denied the Does' motion for attorney's fees.

## II.

Parties must generally exhaust administrative remedies before they can bring a lawsuit under the Individuals with Disabilities Education Act. 20 U.S.C. § 1415(*l*); *see Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2000). Properly following the administrative process allows issues to be thoroughly vetted, and hopefully resolved, without court intervention. However, "[e]xhaustion is not required if it would be futile or inadequate to protect the plaintiff's rights." *Covington*, 205 F.3d at 917; *see Honig v. Doe*, 484 U.S. 305, 326-27 (1988). "The burden of demonstrating futility or inadequacy rests on the party seeking to bypass the administrative procedures." *Id.* In this case, the School District raised the Does' failure to exhaust administrative remedies as an affirmative defense. *Cf. Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 867-71 (9th Cir. 2011) (en banc) (holding that failure to exhaust administrative remedies required by the Act is an affirmative defense); *Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 203-04 & n.6 (2d Cir. 2007); *McQueen ex rel. McQueen v. Colorado Springs Sch. Dist. No. 11*, 488 F.3d 868, 873 (10th Cir. 2007); *Mosley v. Bd. of Educ. of Chicago*, 434 F.3d 527, 532-33 (7th Cir. 2006).

The Does admit in their complaint that they have not exhausted administrative remedies and include allegations to establish that they fall within the futility exception such that exhaustion is not

required.  However, because the Does did not request a due process hearing before filing this lawsuit, we cannot conclude that the administrative process would have been futile or inadequate.[1]

The Does rely primarily on *Massey v. District of Columbia*, 400 F. Supp. 2d 66 (D.D.C. 2005), in support of their argument that the administrative process would have been futile.  In *Massey*, the court held that the plaintiffs fell within the futility exception because the school district repeatedly failed to follow the Act's procedural requirements and appeared to be incompetent to address the plaintiffs' complaints about its failure to abide by these statutory requirements.  *Id.* at 74.  However, unlike this case, in *Massey*, the school district had already developed an Individualized Education Plan for the student and failed to follow the procedures required by the Act after the student's parents requested a due process hearing.  *Id.* at 69.  Here, while the School District's conduct is far from exemplary, it has not clearly failed to follow the requirements of the Act in a manner that demonstrates that resort to the administrative process would have been futile.  The allegations in the Does' complaint suggest that the School District delayed providing relief.  However, unlike the plaintiffs in *Massey*, the Does do not identify any specific violation of the time requirements in the Act.  The School District delayed scheduling Anthony's initial evaluation but, because the Does never filed a request for a hearing, the delay did not violate any provisions of the Act.  Similarly, while the Does allege that the School District did not schedule a pre-hearing meeting within the time limits required by the Act, such a meeting was not required because the Does never

---

[1]The Does also argue that a complaint cannot be dismissed for failure to exhaust administrative remedies via a Rule 12(b)(6) motion, and that the motion must be converted to one for summary judgment.  However, the Does' complaint contains allegations in support of their contention that the administrative process would have been futile or inadequate, and they do not identify anything outside the complaint that the district court should have considered.

formally requested a hearing. Therefore, the time limits in the Act do not apply and the School District was not required to comply with them. The School District's failure to act more quickly does not establish that the administrative process would have been futile or inadequate to address the Does' complaints.[2]

Although the Does were not satisfied with the School District's actions, the Act contemplates this situation and directs aggrieved parties to request a due process hearing in such a situation. Because the Does did not attempt to fully invoke the administrative process by requesting a due process hearing, we cannot conclude that they met their burden of establishing that resort to the administrative process would have been futile or inadequate.

**III.**

The School District did not act quickly to address Anthony's issues, but because the Does did not invoke the administrative review process by filing a due process complaint, we cannot conclude that resort to the administrative process would have been futile or inadequate. Therefore, we **AFFIRM** the decision of the district court dismissing the action because the Does failed to exhaust administrative remedies.

---

[2]The Does argue that the School District's failure to adopt an Individualized Education Plan prior to the start of the school year excuses their failure to exhaust administrative remedies. However, the Does had the opportunity to pursue administrative remedies well in advance of the beginning of the school year.